**Decided September 7, 1979**

17

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

JUDITH G. ABRAMS,                    )      CIVIL CASE NO. 78-021
                                     )
            Plaintiff,               )
                                     )
        vs.                          )      DECISION AND ORDER
                                     )
SAILBOAT CUTTER "SLOW                )
DANCER", HER ENGINES, ETC.,          )
and BENJAMIN M. ABRAMS,              )
                                     )
            Defendant.               )
_____)

## DECISION AND ORDER

This decision today is but another chapter in the melodramatic saga of the Slow Dancer. Tossed as a ping pong ball, or more appropriately, like a cork on the high seas, between plaintiff and defendant, the Slow Dancer remains as mute testimony to the frailties of human nature, the horror and despair brought on by the failure of a marriage, the pain and suffering caused by prolonged litigation.

Nevertheless, the parties involved sought a judicial resolution of their extended domestic problem and though marital disputes make rare appearances in Federal Courts, the cause of action was effectively couched in terms that allowed this Court to intervene. Accordingly, this Court is prepared to issue an order on motions now pending.

A brief history of this case is in order.

On Februrary 18, 1975, Judith Gale Abrams filed a Complaint for Divorce in the Trial Division of the High Court of the Trust Territory. That day, Benjamin M. Abrams filed a Waiver of Service and Consent to Default Judgment in the same case, and a Decree of Divorce was entered on July 22, 1975, granting plantiff a divorce on the grounds plead in the Complaint. Paragraph four in the Complaint states:

18

[4] That in such event that defendant purchases a sailboat within 2 years after the entry of a decree herein, plaintiff is to have a 50% ownership interest therein. For the first five years from delivery of said sailboat, neither party be allowed to sell his/her interest, nor assign or otherwise convey his/her interest without written consent of the other party. After the first 5 years, either party be allowed to sell, assign or convey his/her interest, provided the other party is served 60 days advance written notice of intention to sell, assign or convey, and an offer to the other party to purchase.

It is undisputed that the Sailboat Cutter "Slow Dancer" named as defendant in the Complaint was purchased within two years after the entry of the decree.

During January of 1977, Benjamin Abrams sailed the "Slow Dancer" from the Territory of Guam to Saipan. The vessel was then moored in Tanapag Harbor and unable to undertake an ocean voyage. On May 30, 1978, Judith Abrams filed a Complaint in this Court pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Rule "D" of the Supplemental Rules for Certain Admiralty and Maritime Claims. Plaintiff, a resident of Guam, alleged in her First Claim that she and defendant, Benjamin Abrams, a resident of Saipan, were unable to agree to the use of the "Slow Dancer" and prayed for the sale of the vessel under the direction of the court. Plaintiff further alleged in Count 2 that certain of her personal property remains on board the vessel and requests the return of same.

Defendant duly moved for Partial Summary Judgment as to the first count alleging res judicata and collateral estoppel as barring the cause of action, and the matter came on for hearing upon the record. After hearing the oral arguments of counsel as well as the consideration of memoranda and affidavits filed relevant to said motion and the record therein, the Court took the matter under submission.

Defendant contended that the final decree of division in the prior action binds the plaintiff to the demands made in her Complaint. It is undisputed that the decree prohibits the sale or conveyance of the sailboat within five years of the purchase date. Accordingly, defendant argues, plaintiff is bound by said provision and collateral estoppel applies as to her prayer requesting the sale of the "Slow Dancer."

19

On October 26, 1978, this Court granted defendant's Motion for Partial Summary Judgment holding that the doctrine of collateral estoppel precluded relitigation of Count 1 of plaintiff's Complaint for Partition, and noted in the absence of a demand for possession, plaintiff was bound by her prayer for sale of the vessel.

Plaintiff duly sought leave for and was allowed to file her First Amended Complaint, and on December 14, 1978 such a pleading was filed, requesting "the right to exclusive use and possession for the same amount of time enjoyed by defendant against the interest of plaintiff." Plaintiff subsequently petitioned the Trust Territory High Court on December 6, 1978 for an order modifying the decree of divorce, the document which has been the cause of the dispute in this action. The motion appeared to be grounded in plaintiff's understanding that the parties would maintain co-ownership interests as well as equal rights to possession and use of the Slow Dancer. The motion was denied by the High Court on January 22, 1979 and defendant brought a subsequent motion for partial summary judgment with this Court, filed January 25, 1979.

Defendant again sought the operation of res judicata and collateral estoppel to dispose of the case, this time insisting that the High Court's denial of the attempt to modify the decree operated to preclude further litigation on the question of present possession of Slow Dancer. However, a perusal of the High Court Order showed no specific finding as to the question of possession, and thus the motion was denied on February 22, 1979.

Subsequently, plaintiff herein moved for summary judgment on April 10, 1979, alleging that the High Court had no jurisdiction to hear post judgment actions in this case due to the operation of Section 4 of the Schedule of Transitional Matters for the Constitution of the Northern Mariana Islands. In effect, plaintiff maintained that she was acting without legal authority in presenting the Motion for Modification to the High Court, and that the High Court was without jurisdiction to hear that motion. As a result, this Court, it is alleged, has the right to review the question of ownership in this Court.

20

Construing the interest created by the decree of divorce as a tenancy in common, plaintiff concluded that she was entitled to a possessory interest in the vessel as well.

Several days later, on April 20, defendant moved for relief from the Order Denying Partial Summary Judgment, on the grounds that the High Court entered an Amended Order on March 26, 1979, holding that "defendant is entitled to and shall have sole and exclusive possession of the vessel Slow Dancer...." Nevertheless, there existed still another ambiguity and the High Court subsequently issued a Nunc Pro Tunc Correction of Amended Order which corrected Paragraph 1(a) of the court's conclusions to read, that "For the first 5 years from delivery of the sailboat, the Defendant's possession shall not be disturbed unless both parties agree in writing to a change in status." With this, defendant hoped that the matter could finally be resolved in his favor. Unfortunately for him, he never squarely addressed the arguments of plaintiff.

After several continuances and stipulations, plaintiff's Motion for Summary Judgment and defendant's Motion for Relief from Order were heard on June 18, 1979. This Court reserved its ruling pending receipt of additional memoranda on the question of jurisdiction. Again, this Court was faced with unresolved questions. Rather than face the prospect of repetitive appellate consideration of related issues, an order was issued on July 9, 1979, holding the motions in abeyance pending resolution of the question of jurisdiction on appeal to the High Court. Defendant thereupon moved to dismiss the appeal in the High Court, "for the reason that the (High) Court lacks jurisdiction over appeals from the Trial Division of the High Court to the Appellate Division of the District Court for the Northern Mariana Islands and that this appeal is not provided for by law." An order to that effect was entered August 9, 1979. Likewise, an order dismissing the Appeal of the Order Denying Plaintiff's Motion to Modify the Decree of Divorce was entered for the untimely filing of the Notice of Appeal.

Plaintiff duly filed an appeal of the High Court order dismissing the appeal she had filed with the High Court for determination the by the Appellate Division of this Court,

21

leaving the Trial Division with the ignominious prospect of now deciding a case while the same matter is on appeal to the Appellate Division.

The threshold question is that of the jurisdiction of the High Court. For if the High Court has acted within its jurisdiction during the proceedings of its case, this Court will be compelled to enter summary judgment for Defendant Abrams. Likewise, a determination that the High Court had not the jurisdiction to entertain the recent past proceedings would defeat defendant's theory. Plaintiff's contention rests with the argument that jurisdiction over any post judgment action in this case rests with either the Commonwealth Trial Court or the District Court for the Northern Mariana Islands. Defendant on the other hand argues that jurisdiction once determined is not subject to collateral attack.

Indeed, there is ample case law standing for the proposition that once decided by a court of general jurisdiction, it cannot be further questioned by a collateral attack. Hardy v. Banker's Life & Casualty Co., 232 F.2d 205, 209 (7th Cir. 1956), Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134 (1938)

In the case of Baldwin v. Iowa Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517 (1931), the defendant there had objected to the court's jurisdiction over it, lost, and then withdrew from the case. The plaintiff proceeded to obtain judgment. Later, when he tried to enforce it in another state, the defendant objected on the same jurisdictional grounds urged before. The court held the matter was res judicata. The same principle has been applied when the challenge to the jurisdiction was over subject matter. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317 (1940), Treinies v. Sunshine Mining Co., 308 U.S. 66, 66 S.Ct. 44 (1939).

In Murphy v. Kodz, 351 F.2d 163 (9th Cir. 1965) the Ninth Circuit affirmed a judgment in a situation where two defendants, after judgment had been entered against them, moved to remand the case to state court on the grounds that the federal court lost jurisdiction of the case upon entry of judgment against a third defendant, the sole party entitled to invoke federal court jurisdiction. 22

The court noted,"that the District Court proceeded with the non-federal claims does not in this instance afford a ground for reversal: Failure of the appellants to bring to the attention of the court considerations requiring an exercise of discretion estops them from asserting that privilege after decision on the merits. (citations omitted) To hold otherwise would encourage litigants to wager on their success on the merits and if they lost, permit them to call the contest a nullity" at 168.

This Court is compelled to follow the logic of the Supreme Court which observed in Stoll v. Gottlieb, supra, 59 S.Ct. at 137-138:

> We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.... After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction then rendered merely retries the issue previously determined.

The facts herein are not disputed. Plaintiff was the petitioner in the High Court Civil Action 18-75. She instituted proceedings in this Court. Plaintiff-petitioner attempted to modify the decree of divorce, but was unable to do so. Nevertheless, when defendant herein attempted to plead the order denying the motion for modification as a matter bound by the doctrine of collateral estoppel, plaintiff objected on the basis of lack of juridiction of the High Court, and appealed through the High Court the question of the merits of the motion for modification as well as the question of jurisdiciton. By subtle and adroit pleadings, the plaintiff has gained a substantial advantage. If she had prevailed on the motion for modification, would she then have raised the question of jurisdiction?

It is clear that plaintiff was offered her day in court with respect to every issue involved in the litigation, including the jurisdiction issue. Under such circumstances, there is nothing in the concept of due process which demands that a party

23

be afforded multiple opportunity to litigate jurisdictional questions. <u>Sherrer v. Sherrer</u>, 334 U.S. 343, 68 S.Ct. 1083, 1 ALR 2d 1355 (1948).

Plaintiff further argues that "The High Court is not sworn to uphold the Constitution of the Northern Mariana Islands. Having it retain jurisdiction in the Northern Marianas could be compared to the courts of England maintaining jurisdiction over citizens of the United States after the revolution. The intent of the framers of the Constitution of the Northern Mariana Islands, indeed the whole purpose of the Constitution, was to create a sovereignty. It is not in keeping with this intent and purpose to allow an entity devoid of loyalty to, or identity with that sovereignty, to control the lives of citizens of the Commonwealth of the Northern Mariana Islands."

Such an argument, this Court finds as a curious one, for the pleadings allege that plaintiff is a resident of Guam, and specifically sought relief in the High Court. Furthermore, there is no indication whatsoever that the High Court disposed of this particular case in a manner which would be inconsistent with a court of the Northern Marianas. Indeed, the body of law, both written and as construed are identical.

The question of what effect is to be given to an adjudication by a court that it possesses requisite jurisdiction in a case, where the judgment of that court is subsequently subject to collateral attack on jurisdictional grounds has been given frequent consideration by the U.S. Supreme Court over a period of many years. Insofar as cases originating in the federal courts are concerned, the rule has evolved that the doctrine of res judicata applies to adjudications relating either to jurisdiction of the person or of the subject matter where such adjudications have been made in proceedings in which those questions were in issue and in which the parties were given full opportunity to litigate. The reasons for this doctrine have frequently been stated. Thus in <u>Stoll v. Gottlieb</u>, <u>supra</u>, 305 U.S. 165, 172 (1938), it was said:

"Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to·jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory that the first."

Thus the finality provision of Section 4 of the Schedule on Transitional Matters of the Constitution of the Northern Mariana Islands as applied to this case need not be considered for this Court is obliged to accept the decision of the High Court concerning its jurisdictional pronouncements. In passing, it is observed that there appears to be nothing objectionable to the High Court's analysis and its resolution of the matter of jurisdiction.

With the question of jurisdiction thus resolved, the resolution of the motions now before this Court are in order. Defendant has moved for a Motion for Relief from Order pursuant to Rule 60(b)(5) of the Federal Rules of. Civil Procedure. The Order from which he seeks relief is the Decision Denying Motion for Partial Summary Judgment of February 20, 1979. There, this Court denied said motion for the reason that the question of possession of the "Slow Dancer" was fully litigated by the High Court. Since there was no specific findings with respect to this issue, defendant was held not to have met his burden of proof and accordingly, the motion was denied. Subsequent thereto, an amended order clarifying the point was entered, and now it is apparent that the High Court found possession to be in defendant herein.

The doctrine of collateral estoppel is based on the policy. of limiting litigation by preventing a party who has had one fair trial on the issues from again drawing it into controversy.

This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his or her case. Huang Tang v. Aetna Life Insurance Co., 523 F.2d 811 (9th Cir. 1975), Peterson v. Clark Leasing Corp., 451 F.2d 1291 (9th Cir. 1971).

Here, plaintiff has had more than ample opportunity to present her case, and cannot now disregard the operation of collateral estoppel. Under the principles set forth in Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 323 (1971), Defendant has set forth the requirements sufficient to apply the doctrine of collateral estoppel. Summary judgment can be granted only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Stanisfer v. Chrysler Motors Corp., 487 F.2d 59, 63 (9th Cir. 1973). Parties moving for summary judgment have the burden to show that there is no genuine issue of material fact and are required to show the existence or non-existence of facts. Quadra v. Superior Court, 378 F.Supp. 605, 624 (DC Cal. 1974). It is clear that defendant is entitled to prevail.

With respect to plaintiff's motion for summary judgment, it appears that the theory upon which plaintiff proceeded was that this Court had exclusive jurisdiction over any matter since the advent of the Constitution, and thus any order of the High Court after the effective date of the Constitution is a nullity and cannot operate as a ground for collateral estoppel.

As indicated supra, this Court will make no independent inquiry beyond the High Court's determination of jurisdiction. Furthermore, in passing, this Court finds that there appears to be nothing objectionable to the High Court's determination of the jurisdiction question.

Plaintiff further argued that the facts otherwise would not be in dispute and that she would be entitled to judgment as a matter of law. This need not be of great concern, since the

determination of jurisdiction precludes consideration of the merits of possession. Furthermore, defendant's Affidavit in Opposition to Plaintiff's Motion for Summary Judgment has effectively placed material facts in controversy and thus denies plaintiff the relief she seeks.

There is left for resolution Count II of Plaintiff's amended complaint, and Defendant's counterclaim. Hopefully these matters can be quickly disposed of.

Based on the foregoing, this Court finds that good cause appears for the granting of defendant's motion and accordingly it is ORDERED that the Decision Denying Motion for Partial Summary Judgment be set aside. Furthermore, defendant's Motion for Partial Summary Judgment is hereby GRANTED. Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED:  Saipan, Northern Mariana Islands this _7th_ day of SEPTEMBER, 1979.

_____
Judge of the above entitled Court