639 F.2d 1090
 Charles E. BUNTING and Kenneth Tyler, Appellees,
v.
The CITY OF COLUMBIA, a body politic and municipal
corporation; John T. Campbell, Mayor; William C. Ouzts; R.
E. L. Freeman; T. Patton Adams; and Kirkman Finlay, members
of Council for the City of Columbia; Graydon V. Olive, Jr.,
Columbia City Manager; Ronald Cunningham, personnel officer;
and William R. Cauthen, Chief, City of Columbia Police
Department, all of the individual defendants above being
sued individually as well as in their respective official
capacities, and their successors in office, Appellants.
Charles E. BUNTING and Kenneth Tyler, Appellants,
v.
The CITY OF COLUMBIA, a body politic and municipal
corporation; John T. Campbell, Mayor; William C. Ouzts; R.
E. L. Freeman; T. Patton Adams; and Kirkman Finlay, members
of council for the City of Columbia; Graydon V. Olive, Jr.,
Columbia City Manager; Ronald Cunningham, personnel officer;
and William R. Cauthen, Chief, City of Columbia Police
Department, all of the individual defendants above being
sued individually as well as in their respective official
capacities, and their successors in office, Appellees.
 Nos. 79-1765, 79-1803.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1980.
Decided Feb. 5, 1981.
 
 Craig K. Davis, Columbia, S. C. (Medlock & Davis, Columbia, S. C., on brief), for appellees/cross-appellants.
 Stephen T. Savitz, Columbia, S. C. (Julian H. Gignilliat, Gignilliat & Savitz, Columbia, S. C., on brief), for appellants/cross-appellees.
 Before HALL, MURNAGHAN and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge.
 
 
 1
 This appeal arises out of an action brought under 42 U.S.C. § 1983 by Charles Bunting and Kenneth Tyler, two former policemen for the city of Columbia, South Carolina. Bunting and Tyler sued the City of Columbia and various city officials[1] claiming that their constitutional rights[2] were violated when they were dismissed without a hearing. They sought reinstatement with back pay and other injunctive relief.
 
 
 2
 Bunting and Tyler appeal the order of the district court holding that they did not have a constitutionally protected liberty or property interest in their employment that was infringed when they were dismissed from the city police force without a hearing. The district court concluded, however, that Bunting and Tyler were entitled to a grievance hearing pursuant to the County and Municipal Employees Grievance Procedure Act, S.C. Code § 8-17-150 (1976).[3] The city officials appeal this ruling. We affirm.
 
 I.
 
 3
 Bunting and Tyler were hired as police officers by the City of Columbia Police Department on April 28, 1975. Both were given a written evaluation of their performances after they had worked for the police department for approximately eight months. Although their eight month evaluations noted the areas in which each employee needed to improve,[4] the two policemen were allowed to continue work. The two policemen did not receive another evaluation until early June 1976. The June evaluations for both employees recommended that they not be retained. Thus, on June 7, 1976, both Bunting and Tyler were notified by a police captain that they were being terminated immediately. The only written statements of reasons that they were given were their final evaluations. After being terminated both Bunting and Tyler filed written requests seeking the opportunity to appeal their discharges, but the requests were denied by the city manager on the grounds that both men were probationary employees and thus were not entitled to appeal their dismissals.[5]
 
 
 4
 After the policemen were discharged, the police chief, upon inquiry by the press, commented that the two policemen were discharged because they did not fulfill the police department's expectations. The police chief's comments were published in the Columbia newspapers.
 
 II.
 
 5
 Bunting and Tyler contend that their Fourteenth Amendment due process rights were violated when they were dismissed without a hearing.[6] In order to be accorded the protection of the due process clause, the complaining party must have a liberty or property interest within the meaning of the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).
 
 A.
 
 6
 A property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts. Id. at 577, 92 S.Ct. at 2709. The question with which we are confronted in this case is whether there is any such source supporting Bunting's and Tyler's claim to a property interest in continued employment. We hold that there is not.
 
 
 7
 The two former policemen have cited us to a state constitutional provision, several state statutes and local ordinances, and to the city personnel manual in support of their position that they have a property interest in continued employment. The sufficiency of the claim of entitlement from any such source must be evaluated by reference to the law of South Carolina. See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
 
 
 8
 Columbia has a council-manager form of government,[7] and the city manager in a council-managed city is empowered under state law to dismiss any city employee "for the good of the municipality." S.C. Code § 5-13-90 (1976). Similarly, Columbia has adopted an ordinance permitting the city manager to dismiss employees when necessary for the good of the city. Code of Ordinances for the City of Columbia, South Carolina, § 3-3. Such provisions indicate that city employees do not have a property interest in their employment but rather that they hold their positions at the will and pleasure of the city. Accord, Bane v. City of Columbia, 480 F.Supp. 34 (D.S.C.1979); Gambrell v. City of Columbia, No. 77-CP-40-1312 (Court of Common Pleas of Richland County, South Carolina, December 19, 1979).
 
 
 9
 No other state statute or constitutional provision mandates any other conclusion.[8] Cf. Rhodes v. Smith, 273 S.C. 43, 254 S.E.2d 49, 50 (1979) (South Carolina statute allowing sheriff to dismiss his deputy sheriff at the sheriff's pleasure was not affected by the County and Municipal Employees Grievance Procedure Act. S.C. Code § 8-17-110 (1976)). Furthermore, nothing in the city's personnel policy manual can be read as granting a city employee a property interest in his job. Although the policy manual accords permanent employees certain procedural protections when they are dismissed by a department head rather than by the city manager, such protections do not negate the fact that a city employee holds his position at the will of the city and can be dismissed by the city manager without any procedural protections. See Bane v. City of Columbia, 480 F.Supp. 34 (D.S.C.1979).
 
 B.
 
 10
 Bunting and Tyler claim that they had a liberty interest that was violated when they were dismissed without a hearing. The basis for their claim appears to be that their dismissal was accompanied by comments of the police chief, which appeared in the local newspapers, and that these comments placed such a stigma on them as to require that they be given an opportunity to clear their names at a hearing. We disagree.
 
 
 11
 In Board of Regents v. Roth, 408 U.S. 564, 573-75, 92 S.Ct. 2701, 2707-2708, 33 L.Ed.2d 548 (1972), the Supreme Court indicated that when a public employer who, in refusing to rehire an employee, makes charges against him that might damage his standing in the community or otherwise imposes a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities, an employee's interest in liberty may be implicated, and he should be granted a hearing to clear his name. This liberty interest was qualified further by the Supreme Court in Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) where the Court noted that when there is no public disclosure of the reasons for discharging a public employee whose job is terminable at the will of the employer, no liberty interest is implicated.
 
 
 12
 Although there was some publicity surrounding the discharges of Tyler and Bunting, the only reason for their dismissal that was made public was that their services did not meet the expectations of the police department. Such a remark cannot be viewed as a comment of such damaging effect as to impair Bunting's and Tyler's standing in the community. Furthermore, we are not willing to conclude that they were stigmatized to such a degree that their freedom to take advantage of other employment opportunities was foreclosed. Cf. Cox v. Northern Virginia Transportation Commission, 551 F.2d 555 (4th Cir. 1976) (public charges of dishonesty or immorality made about discharged employee warranted hearing to allow employee to clear her name); McNeill v. Butz, 480 F.2d 314 (4th Cir. 1973) (hearing necessary for charges of dishonesty). Certainly, a person who has been fired may be somewhat less attractive to other potential employers, but it would be stretching the concept too far to conclude that a person's liberty interest is impaired merely because he has been discharged. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972).
 
 III.
 
 13
 While we conclude that Bunting and Tyler did not have any constitutional rights implicated in their dismissal, we nonetheless agree with the district court that they are entitled to a grievance hearing under the County and Municipal Employees Grievance Procedure Act (hereinafter "Act"), S.C. Code § 8-17-110 (1976). We reach this conclusion based on our reading of § 8-17-120 of the Act which provides in relevant part:
 
 
 14
 The governing body of any ... incorporated municipality ... may by ordinance or resolution adopt a plan for the hearing and resolution of employee grievances which, if adopted, shall conform substantially to the guidelines set forth in this article. (emphasis added)
 
 
 15
 The City of Columbia has in effect adopted a plan in its personnel policy manual for dealing with a particular type of employee grievance, that of appeals from employee dismissals.[9] Employee dismissal grievances are included explicitly in the Act. S.C. Code § 8-17-120 (1976). Since Columbia has adopted a plan, § 8-17-120 mandates that the plan "shall conform substantially" to the provisions of the Act. We hold that Columbia's plan differs in a material respect from that set forth in the Act. Columbia does not accord a policeman any right to file a cognizable grievance relative to his dismissal until after he has been on the police force for one year. Under the Act, an employee may file a grievance if he has completed six months of satisfactory service. S.C. Code § 8-17-150 (1976). Because the purpose of the Act is to implement a uniform grievance procedure so as to create a more harmonious relation between public employers and public employees thereby resulting in improved public service, we feel that such purpose cannot be effectuated if Columbia's police employees must wait for a longer period of time than other municipal and county employees to voice their grievances. We hold that Bunting and Tyler as municipal employees who have completed six satisfactory months of service are entitled to an administrative grievance hearing consistent with the County and Municipal Employees Grievance Procedure Act. Thus, this case is remanded to the city with directions to accord Bunting and Tyler such a hearing on their grievances.
 
 IV.
 
 16
 Bunting and Tyler also contend that they are entitled to attorney's fees under 42 U.S.C. § 1988, which provides that the court "may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Because we have addressed their constitutional claims on the merits and have decided the claims against Bunting and Tyler, we hold that they are not entitled to recover attorney's fees under 42 U.S.C. § 1988. We reach this conclusion even though we have granted Bunting and Tyler a grievance hearing pursuant to state law. Haywood v. Ball, 634 F.2d 740 (4 Cir. 1980).
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 In particular, in addition to suing the city, Bunting and Tyler sued William R. Cauthen, Chief of the Columbia Metropolitan Police Department; Ronald O. Cunningham, director of the Office of Personnel for Columbia; T. J. Campbell, mayor of Columbia and presiding officer of the city council; city council members, William C. Ouzts, R. E. L. Freeman, T. Patton Adams, and Kirkland Finlay; and Graydon V. Olive, city manager. The district court dismissed the City of Columbia as a party on the grounds that it could not be sued under 42 U.S.C. § 1983 or on a direct constitutional claim. Subsequent to the dismissal of the city the Supreme Court rendered its decision in Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) in which the Court recognized that a municipality or other local governing body may be sued for monetary, declaratory, or injunctive relief under 42 U.S.C. § 1983. Although the city is technically a proper party, there seems to be no advantage that would accrue to Bunting and Tyler in this case by joining the city since the relief that we accord pursuant to the County and Municipal Employees Grievance Procedure Act, S.C. Code § 8-17-110 (1976) may be accomplished under the authority of the city manager who has been joined as a party. S.C. Code § 8-17-160 (1976)
 
 
 [2]
 In their amended complaint, the two former policemen claimed that their First and Fourteenth Amendment rights were violated. In conjunction with their First Amendment claim, Bunting and Tyler contended that they were terminated because of their union activities. The First Amendment claim, however, has been abandoned on appeal
 
 
 [3]
 Section 8-17-150 provides:
 When any permanent ... municipal employee who has completed six months of satisfactory service is unable to resolve an alleged grievance by discussion and negotiation with his employer, he may request in writing a hearing before the grievance committee .... Within ten days of receipt of the employee's request, the governing body or its designated agency shall schedule the requested hearing and notify the grievance committee and the employee requesting the hearing.
 
 
 [4]
 Bunting was evaluated on January 13, 1976 for the 6 month period from April 28, 1975 to October 28, 1975. It was noted on his evaluation form that he "(n)eeds to improve a great deal during the next evaluation period." Tyler was evaluated on January 9, 1976 for the same period for which Bunting was evaluated. The following comments were noted on Tyler's evaluation: "Has satisfactorily performed since being employed. Has the ability to perform even better as experienced is gained."
 
 
 [5]
 At the time both policemen were hired, and at all times during their employment, the City of Columbia distributed to its employees a personnel manual entitled "Your Career with the City of Columbia," that sets forth the city's policy with respect to its employees. The provisions in the manual that relate to employee discharge distinguish between permanent and probationary employees. A probationary police employee is defined as someone who has less than 12 months of service. The personnel policy manual grants permanent employees who are dismissed by a department head certain procedural protections, such as the right to know the reason for the discharge and the right to appeal, that are not accorded to probationary employees
 
 
 [6]
 The Fourteenth Amendment provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law."
 
 
 [7]
 Columbia became a council-manager form of government in January 1976. Prior to adopting such form of government, it appears that Columbia's employees were hired through the State Civil Service System. Thus, Bunting and Tyler were hired as civil service employees. A troublesome factor in this case is that a city ordinance relating to civil service employees was in effect when Bunting and Tyler were dismissed. Code of Ordinances for the City of Columbia, South Carolina, § 2-71. The ordinance, which was repealed by Ordinance 76-36 on November 17, 1976, provided that the civil service employees could be dismissed only in accordance with the state civil service statutes. The relevant state civil service statute provides that "(n)o appointee to a civil service position shall be removed from office ... except by and with the approval of a majority of the civil service commissioners upon charges duly presented as to which the employee shall have the opportunity to make his defense." S.C. Code § 5-19-40 (1976). In 1975, South Carolina adopted home rule which permitted its cities to choose one of three forms of government. The legislation which set forth the three forms explicitly provided that except for municipal laws relating to utility services, "all other municipal laws in effect prior to the effective date of this act which are in conflict with the provisions contained herein are superseded by this act when a new form of municipal government becomes effective in that municipality." 1975 S.C. Acts 283, § 7. The effective date of the chosen form of government was designated as the date when the certificate of incorporation for a city is filed. 1976 S.C. Acts 623, § 7. Columbia elected to adopt the council-manager form of government, and its certificate of incorporation was issued on January 14, 1976. Under state law, the city manager of a council-manager form of government is mandated to "(a)ppoint and, when necessary for the good of the municipality, remove any appointive officer or employee of the municipality." S.C. Code § 5-13-90 (1976). The Civil Service ordinance § 2-71 is in direct conflict with the powers given to the city manager; thus, the ordinance was repealed when Columbia was issued its certificate of incorporation on January 14, 1976. 1975 S.C. Acts 283, § 7
 
 
 [8]
 The state constitutional provision cited by the two former policemen is Article I, § 22, which provides:
 No person shall be finally bound by a judicial or a quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; ... nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.
 Such provision does not create a property right, but rather it merely protects one already in existence. Since we hold that Bunting and Tyler have no property interest in their employment, the constitutional provision is not relevant.
 
 
 [9]
 The policy manual provides that "(a) department head may dismiss any probationary or permanent employee for cause. Permanent employees shall be informed of the specific cause or causes for their dismissal by the department head and shall be allowed a reasonable time to reply thereto in writing."